UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ZEYEN, | Case No. 4:16-cv-00458-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| POCATELLO/CHUBBUCK SCHOOL DISTRICT #25, CENTURY HIGH SCHOOL, MARY M. VAGNER, and JOHN DOES I–X, | |
| Defendants. | |

## I. OVERVIEW

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 32. Plaintiff Michael Zeyen asserts Defendants Pocatello/Chubbuck School District #25 ("School District" or "District"), Century High School, and former Superintendent Mary M. Vagner violated his constitutional rights when they prohibited him from entering School District property or attending any school events. The Court held oral argument on the Motion on April 10, 2018. For the reasons outlined below, the Court finds good cause to GRANT the Motion in all respects except as to a specific portion of Zeyen's First Amendment claim.

## II. BACKGROUND[1]

On May 4, 2015, Zeyen arrived at Washington Elementary School in Pocatello, Idaho, in order to take his daughter, then nine-year-old A.Z., to see Zeyen's attorney. Zeyen and A.Z.'s mother, Jennifer Lepchenske, are divorced. Lepchenske had primary physical custody of A.Z. and their other two children, but Zeyen had some visitation rights. Zeyen was concerned Lepchenske might reignite the custody battle, so he planned to take A.Z. to his attorney's office and have her give an affidavit.

Zeyen went to the front office of Washington Elementary and informed the school secretary, Maggie Nielson, that he was there to pick up A.Z. Shortly thereafter, Zeyen proceeded to A.Z.'s classroom without receiving verbal confirmation from Nielson that he could go to the classroom. Zeyen maintains Nielson gestured to him while she was on the phone in a way that he understood to mean he could proceed to the classroom. The parties dispute whether A.Z. had expressed a desire not to go with Zeyen and how A.Z.'s teacher, Ms. Wolff, acted when Zeyen arrived at the classroom. The parties agree Wolff called the police, asked to see Zeyen's Divorce Decree, and then locked the classroom when Zeyen left to get the Decree from his car.

When Zeyen returned with the Divorce Decree, he tried to open the classroom door, but it was locked. He then went to a nearby counselor's office, but the door was also locked. Zeyen returned to the main office and gave the Divorce Decree to Nielson, who made a copy of the document. The police arrived shortly thereafter. Zeyen told the

---

[1] The following facts are construed in the light most favorable to Zeyen, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

officers he was there to pick up his daughter and showed them his Divorce Decree. The Decree states, in relevant part: "Father shall have visitation with the minor children anytime he is in the [sic] Pocatello, Idaho, and upon providing appropriate notice to Mother." Dkt. 32-6, at 25. One of the officers, Officer Hancock, reviewed the Decree and asked Zeyen if he had provided appropriate notice to A.Z.'s mother before picking up his daughter. Defendants assert Zeyen told Officer Hancock he had not, while Zeyen maintains he stated he had provided the required notice. Officer Hancock then order Zeyen out of the school. Defendants assert Zeyen "yelled all the way out of the school" and then got into a "verbal altercation with A.Z.'s stepfather" outside of the building. Zeyen admits that he exchanged words with A.Z.'s stepfather. Shortly thereafter, Lepchenske arrived at the school and checked A.Z. out for the rest of the day.

Later that day, Vagner (then Superintendent of the School District) drafted a letter to Zeyen prohibiting him from "entering upon any property or school building of the District" and from attending "any school-related activities" until he received "further written notice from this office." Dkt. 32-6, at 56. The letter also stated that "[a]ny future communication will be limited to email and/or written mail through this office." *Id.* Finally, the letter informed Zeyen that "[t]he personnel at the District Office, the schools and the transportation department have been advised of this determination and are required to report your presence on school property to the Pocatello Police Department School Resource Officers." *Id.*

On May 8, 2015, Zeyen's attorney wrote a letter to Vagner stating that her decision denied Zeyen's his fundamental right to participate in his child's education

without providing him with due process of law. *Id.* at 58–59. The letter "demand[ed] that [she] reconsider" her decision and "stop interfering with Mr. Zeyen's rights to participate in his children's education." *Id.* The letter also "request[ed] an opportunity to sit down with [Vagner] and discuss the issues that have arisen." *Id.*

Vagner responded with another letter on May 20, 2015. *Id.* at 61–62. She declined to retract the previous letter, stating that Zeyen did "not have a right to be on District property under the[] circumstances." *Id.*

In October 2015, Zeyen picked up his eldest daughter, O.Z., a member of the Century High School band, from the high school football stadium after she had a panic attack. The panic attack appears related to sexual harassment O.Z. was experiencing from a male band student. O.Z. reported the sexual harassment to the band teacher, Mr. Brien, who did nothing. Brien also penalized O.Z. for missing band practice because of her panic attack. Brien contacted Zeyen by phone to tell him why he was punishing O.Z. Kent Hobbs, the Director of Student Support Services, then called Zeyen and told him not to communicate with School District employees and not to travel to an up-coming off-site band concert. Hobbs followed up this phone call with a letter referencing Vagner's 2013 letter and reminding him that any "communication with district staff will need to be initiated through the school district administration." Dkt. 33-3, at 23.

Zeyen took O.Z. to their family doctor following her panic attack. The doctor wrote a note excusing O.Z. from band for the rest of the year and recommended that O.Z. transfer to a different high school.

On July 25, 2016, Zeyen emailed Douglas Howell, the current Superintendent of the School District, requesting information about transferring O.Z. to a different high school. Howell forwarded the email to administrative secretary Robbi Marchand. Marchand sent Zeyen a transfer request form. Zeyen responded to Marchand's email by asking, "Are you related to Scott Marchand?"[2] Dkt. 32-6, at 38. When Marchand did not respond, Zeyen sent her a YouTube video featuring the theme song from Jeopardy. *Id.* at 40–42. Later that evening, Zeyen sent an email to Howell stating, "Best wishes to u to Doug." *Id.* at 36. Shortly thereafter, Zeyen sent an email to Howell and Marchand with the subject line "Mac loses his mind." *Id.* at 35. The email contained a link to a YouTube video entitled "Mac loses his mind." *Id.* at 43–45. The video depicted a man carrying a machine gun. *Id.* The School District contacted the police about the emails. The police issued an "electronic media warning" to Zeyen. The School District also reissued Vagner's 2013 letter barring Zeyen from District property.

On September 6, 2016, the District Clerk received a Notice of Tort Claim from Zeyen. On October 16, 2016, Zeyen filed this case. On February 2, 2018, Defendants filed the pending Motion for Summary Judgment. Also pending before the Court is a Motion to Strike portions of Zeyen's declaration, which Zeyen submitted in opposition to the Motion for Summary Judgment. Dkt. 35.

---

[2] Scott Marchand is the Chief of Police for the City of Pocatello.

# III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

# IV. ANALYSIS

Zeyen asserts three claims against Defendants: (1) violation of the Due Process Clause of the Fourteenth Amendment; (2) violation of the First Amendment; and (3)

violation of Idaho Code § 32-1013.[3] Defendants assert summary judgment is appropriate

on the merits of all of these claims. They also argue that Century High School is an

improper party and Vagner is entitled to qualified immunity.[4] Zeyen has not argued that

Century High School is a proper party in this case.[5] The Court, therefore, finds good

cause to DISMISS all claims Zeyen has asserted against Century High School. The Court

will address the merits of each of Zeyen's claims in turn.

## A. Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State

shall . . . deprive any person of life, liberty, or property, without due process of law." U.S.

Const. amend. XIV, § 1. "A threshold requirement to a . . . procedural due process claim

is the plaintiff's showing of a liberty or property interest protected by the Constitution."

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); *Mathews*

*v. Eldridge*, 424 U.S. 319, 332 (1976). Ultimately, relief on a federal procedural due

process claim is available only to a plaintiff who can "establish the existence of '(1) a

liberty or property interest protected by the Constitution; (2) a deprivation of the interest

[3] The constitutional claims are actionable through 42 U.S.C. § 1983.

[4] For the first time in their reply brief, Defendants assert Zeyen's *Monell* claim against the School District fails. In sum, they assert that for a public entity to be liable a plaintiff must demonstrate that the unlawful government action was part of the entity's policy or custom. Because only the School Board can set the District's policies and customs, Defendants argue Vagner's independent letter to Zeyen is insufficient to establish *Monell* liability. Zeyen has not had an opportunity to reply to this argument. "The Court [need] not address this argument, as it was raised for the first time on reply." *Sadid v. Idaho State Univ.*, No. 4:11-CV-00103-BLW, 2013 WL 6383254, at *1 n.1 (D. Idaho Dec. 5, 2013).

[5] In fact, at oral argument, Plaintiff's counsel conceded that Century High School was not a proper party to this case.

by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090

(9th Cir. 2008) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir.

1993)). Zeyen asserts he has a "fundamental liberty interest . . . to direct the education,

upbringing, and care of his children." The Court must determine whether (1) the

Constitution protects this interest, if it does, (2) whether the government deprived Zeyen

of this interest, and, if so, (3) whether the government failed to give Zeyen due process in

depriving him of that interest.

The Court notes that Defendants have creatively couched the interest at issue to

their advantage. Defendants insist Zeyen has "no fundamental right to be on school

property" and no right "to engage in threatening behavior on school grounds." As the

plaintiff is "the master of the complaint," *Holmes Grp., Inc. v. Vornado Air Circulation

Sys., Inc.*, 535 U.S. 826, 831 (2002), the Court must look past this red herring and analyze

Zeyen's asserted liberty interest.

The Supreme Court has explicitly characterized "the liberty of parents and

guardians to direct the upbringing and education of children under their control" as a

"right[] guaranteed by the Constitution." *Pierce v. Soc'y of the Sisters of the Holy Names

of Jesus & Mary*, 268 U.S. 510, 534–35 (1925). The Supreme Court has also said that

"the interest of parents in the care, custody, and control of their children . . . is perhaps

the oldest of the fundamental liberty interests recognized by this Court." *Troxel v.

Granville*, 530 U.S. 57, 65 (2000). Based on these precedential cases, and many others,

"it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment

protects the fundamental right of parents to make decisions concerning the care, custody,

and control of their children." *Id.* at 66 (collecting cases propounding this liberty interest). Accordingly, the Court recognizes that the interest at issue in this case—as Zeyen has framed it—is a fundamental liberty interest protected by the Constitution.

The Court turns next to the far more difficult question of whether Defendants actually deprived Zeyen of that liberty interest. *See Shanks*, 540 F.3d at 1090. The parties agree the School District barred Zeyen indefinitely from entering District property or from attending school-related activities. The Court must determine whether this ban interfered with Zeyen's asserted liberty interest—the right to make decisions concerning the care, custody, and control of his children.

Zeyen offers *Johnson v. Perry*, a case out of the U.S. District Court for the District of Connecticut in support of his argument. Factually, *Johnson* closely mirrors this case. In *Johnson*, "a father of a former student" brought suit "against a high school principal stemming from the father's banishment from school property and school sponsored events." 140 F. Supp. 3d 222, 225 (D. Conn. 2015), *aff'd in part, rev'd in part, dismissed in part*, 859 F.3d 156 (2d Cir. 2017). The father alleged violations of his due process and First Amendment rights and intentional infliction of emotional distress. *Id.* The district court originally granted the defendant's motion to dismiss the father's due process claim after he "failed to convince the Court with his argument that banishment from 'public sporting events' required a pre-deprivation hearing." *Id.* at 228. However, the court gave the father leave to amend the claim. *Id.* After the father declined to amend, the court, sua sponte, held "that plaintiff's complaint, which alleges that defendant banned plaintiff from all school events, except commencement, implicated the fundamental right of a

parent to make decisions concerning the care, custody, and control of his child." *Id.*

(citing *Troxel*, 530 U.S. at 66). The court went on to explain that, "[a]lthough the State

has authority to restrict school access to ensure a safe and productive environment, it may

not so significantly prohibit an individual parent from normal school access without

affording the parent a fundamentally fair opportunity to contest the State's asserted

reasons for doing so." *Id.* at 229. On appeal, the Second Circuit did not address the due

process claim because, due to some procedural deficiencies, the due process claim was

not within the scope of the notice of appeal and the panel lacked jurisdiction to review

that claim. 859 F.3d at 168.

  In response, Defendants cite a handful of cases that have rejected the argument

that "a parent's fundamental liberty interest in the care of his or her children" should

expand to include "a parental right to physically access a child's school." *T.L. ex rel.

Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at *3 (D.

Or. Mar. 6, 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310

(9th Cir. 2017). These cases are persuasive. *Lowry*, in particular, presented a host of cases

supporting Defendants' position. The *Lowry* court explained,

> "[w]hile *Troxel* does mention that parents have the right to direct and control
> the education of their children . . . , nothing in that decision suggests that it
> includes the right to go onto school property, even if doing so is necessary to
> participate in the child's education." *Mejia v. Holt Pub. Schs.*, No. 5:01–CV–
> 116, 2002 WL 1492205, at *5–6 (W.D.Mich. Mar. 12, 2002); *see also Lovern
> v. Edwards*, 190 F.3d 648, 655–56 (4th Cir.1999) (parent's claim that parent's
> constitutional parental rights were violated by school *superintendents* barring
> parent from school premises held "plainly insubstantial and entirely
> frivolous"); *Justice v. Farley*, No. 5:11–CV–99–BR, 2012 WL 83945, at *3
> (E.D.N.C. Jan. 11, 2012) ("While parents have a general constitutional right
> to direct their children's education without unreasonable interference by the

states, this right is limited in scope and does not include the unfettered right to access school premises"; further noting that "[m]any courts have held that parents do not have a constitutional right to be on school premises" and citing cases) (citation omitted); appeal dismissed, 470 F. App'x 136 (4th Cir. 2012); *Porter v. Duval Cnty. Sch. Bd.*, No. 3:09–CV–285–J–32MCR, 2010 WL 1252177, at *7 (M .D.Fla. Mar. 26, 2010) ("Parents have no constitutional right to be on school premises"), *aff'd*, 406 F. App'x 460 (11th Cir. 2010); *Meadows v. Braxdale*, No. A–08–CA–819–SS, 2010 WL 55974, at *5 (W.D.Tex. Jan. 4, 2010) ("although parents have a constitutional liberty interest 'in the care, custody, and control of their children,' *Troxel*[ ], 530 U.S. [at] 65–66[ ], neither the Supreme Court nor any other court has ever held the Constitution establishes a parental right to access a child's classroom or other school areas while school is in progress and other students are present").

*Id.* Zeyen argues these cases all "make the same analytical error": "[t]hey myopically view the claimed right—recasting it as only about unfettered access to school property—and then minimize the true harm to the parent's liberty interests." The Court disagrees. These cases do not make this error. Rather, they start with the fundamental right of parents in the care, custody, and control of their children—which the Supreme Court recognized in *Troxel* (and other cases)—and then they determine whether that right extends to access to school property and school events. Ultimately, these courts (with the exception of *Johnson*) have determined that the right does not extend that far. The Court is not swayed by *Johnson*, which sua sponte expanded constitutionally protected parental rights. The Court also hesitates to join Johnson considering the Second Circuit did not have the opportunity to review this particular ruling on appeal.

Defendants also cite the preeminent Supreme Court cases providing instruction to courts on the recognition of fundamental rights. These cases caution that courts must "exercise the utmost care whenever" asked to "break new ground in th[e] field" of

fundamental rights. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citation omitted). Such care is required because, "[b]y extending constitutional protection to an asserted right or liberty interest, [courts], to a great extent, place the matter outside the arena of public debate and legislative action." *Id.*

The Supreme Court has outlined "two primary features" of its "established method of substantive-due-process analysis." *Id.* at 721. "First, [courts] have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* (internal citations omitted). "Second, [the Supreme Court] ha[s] required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Id.*

As a threshold matter, the Court notes it uses extreme caution in determining whether to side with Zeyen and recognize that a parent's interest in the care, custody, and control of his or her child extends to access to school property and school events. However, this caution may be unnecessary as this case does not present a close call. In addition to myriad cases rejecting this extension of parental rights, Zeyen presents no evidence that a parent's physical access to school property is "deeply rooted" in this country's history and tradition and makes no argument that it is "implicit in the concept of ordered liberty." In addition, the Supreme Court has many times before "carefully described" the fundamental rights of parents and has yet to cover the right Zeyen now claims. Parents have the right to homeschool their children or send them to private

schools, *see, e.g.*, *Pierce*, 268 U.S. at 535, but if parents choose to send their children to public school, they do not have an unfettered right to access school property or school events.[6]

At oral argument, Zeyen shifted his argument slightly when he asserted that, by banning Zeyen from School District property, Defendants were negatively effecting the parent-child relationship. This reframing does not save Zeyen's claim. He has still failed to cite any cases protecting all aspects of the parent-child relationship.

For all of the reasons stated above, the Court finds, accepting all of Zeyen's factual allegations as true, that the School District did not deprived Zeyen of a fundamental liberty interest. Accordingly, Zeyen's due process claim necessarily fails.

### B. First Amendment Claim

Zeyen next argues Vagner's letter violated his First Amendment rights because its broad scope and indefinite duration prohibits him from engaging in constitutionally protected expression and activities, including the right to vote, the right to petition the government for redress, and the right to peaceably assemble. The Court will address the First Amendment claims generally, and then address these specific arguments.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. It is well established that the First Amendment

---

[6] Defendants argue that Zeyen has multiple other means of directing his children's education away from school, such as monitoring his children's academic progress through the "parent portal." The Court need not address this argument because the case law does not say such an alternative means of participating in a child's education is necessary to protect a parent's constitutional rights if a school district bans the parent from school property.

"does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). The government only violates an individual's free speech rights when it restricts constitutionally protected speech and its justification for the restriction is insufficient. *See Frisby v. Schultz*, 487 U.S. 474, 479 (1988). To determine whether Defendants have violated Zeyen's free speech rights, the Court must determine (1) whether Zeyen's speech is protect by the First Amendment; (2) "the nature of the forum" on which Zeyen seeks to speak; and (3) "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

Courts have widely acknowledged that parents do not have an unlimited First Amendment right to access school property. *See Johnson v. Perry*, 859 F.3d 156, 173 (2d Cir. 2017) (collecting cases); *see also Healy v. James*, 408 U.S. 169, 189 (1972); *Carey v. Brown*, 447 U.S. 455, 47–71 (1980); *McCook v. Springer Sch. Dist.*, 44 Fed. App'x 896, 910–11 (10th Cir. 2002). This right is not limitless, generally, because schools have "the authority . . . and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property" and that they do not engage in disruptive or "threatening conduct that disturbs the tranquility of schools." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999). For example, the *Lovern* court rejected a First Amendment claim brought by a father who was barred from all school property or offices because of his "continued pattern of verbal abuse and threatening behavior towards school officials, including staff and School Board members." *Id.* at 652.

Similarly, in *McCook*, the Tenth Circuit summarily rejected a parent's First Amendment challenge to being banned from all events on school property. 44 Fed. App'x at 910. These cases do not, however, state that individuals have no right to free expression on school property. The First Amendment's protections extend to a broad range of speech and expressive conduct. *See, e.g., Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557 (1995). The rights Zeyen now asserts—including the right to vote, speak at public meetings, and peaceably assemble—fall generally into the category of activities protected by the First Amendment.

The Court turns next to the question of whether School District property is a traditional public forum, a designated public forum, or a limited public forum during the occasions Zeyen wished to express himself on School District property. *See Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 496 (9th Cir. 2015). The *Johnson* case is instructive here. 859 F.3d at 175. The *Johnson* court found banning a parent from a school basketball game, to which the school invited members of the public, might violate that parent's First Amendment rights. The court explained that the school "gymnasium during such games was a limited public forum" in which persons were encouraged to attend and "expected to engage in expressive activity." *Id.* "[U]nless there [wa]s a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school [could] regulate access to its gymnasium when it [wa]s being used as a limited public forum only if its restrictions [we]re reasonable and viewpoint-neutral." *Id.* at 176. Ultimately, the Court found summary judgment was not appropriate because there was a question of fact as to

whether the decision to ban the parent from school property, including public athletic events on and off campus, was reasonable and viewpoint neutral. *Id.* The Ninth Circuit has similarly recognized that the government creates a limited public forum when it "intends to grant only 'selective access,' by imposing either speaker-based or subject-matter limitations." *Seattle Mideast Awareness Campaign*, 781 F.3d at 497. The Ninth Circuit has also held that, "for the period in which the government elects to keep open the limited public forum, any subject-matter or speaker-based limitations must still be reasonable and viewpoint neutral." *Id.* at 499.

Based on these cases, it seems clear that Zeyen does not have a general First Amendment right to access School District property or school events. However, there may be instances in which the School District treats its property as a limited public forum. In those circumstances, the policy banning Zeyen from the property must be reasonable and viewpoint neutral. Zeyen has identified three specific circumstances in which he argues the District has treated its events as limited public forums and the policy banning him from those events was not reasonable and viewpoint neutral.

### 1. Right to Vote

Zeyen first argues Vagner's letter denies him the right to vote because it prevents him from voting at his local polling place, which is located on School District property. In response, Defendants assert Zeyen can vote via absentee ballot or he can petition the School Board for an exception to the blanket ban.

There is case law describing polling places located at schools as "limited" or "designated" public forums open "for the purpose of voting." *United Food &*

*Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 748 (6th Cir. 2004); *Embry v. Lewis*, 215 F.3d 884 (8th Cir. 2000). Thus, when used as a polling place, the School District's property is a limited public forum and the policy banning Zeyen during those time must be reasonable and viewpoint neutral. A jury will have to determine whether the policy was reasonable in light of Zeyen's past behavior and the available alternatives open to him.

## 2. Right to Petition Government

Zeyen next argues the letter violates his right to petition the government because he cannot attend school board meetings and parents' meetings at individual schools. Because he cannot attend these meetings, Zeyen argues the School District has muted his voice on the operation of local schools. School District property becomes a limited public forum, open for limited purposes, during these meetings. Again, a jury will have to determine whether the policy banning Zeyen from these meetings was reasonable and viewpoint neutral.

## 3. Right to Peaceably Assemble

Finally, Zeyen argues the letter prevents him from attending other school events to which the School District invited the public, such as basketball and football games. Defendants appear to argue that such events are not at issue as no one asked Zeyen to leave the Century High School football stadium in October 2015 when he came to pick up his daughter. This argument is misleading. The original letter clearly states:

> the District is prohibiting you from entering upon any property or school
> building of the District. Accordingly, until further written notice from this

office, you are not permitted on any District property, in your children's classrooms, at any of their schools, or at any school-related activities.

Dkt. 32-6, at 56. Moreover, it is not clear that Zeyen actually entered School District property on that occasion or, if he did, that anyone had an opportunity to ask Zeyen to leave. School officials also followed up with Zeyen after that event and reminded him that Vagner's original letter was still in effect.

The Court finds the Second Circuit's decision in *Johnson* persuasive and finds the School District opens up its property as a limited public forum during school sporting events. As with the above discussed circumstances, a jury will need to determine whether the policy banning Zeyen from these events was reasonable and viewpoint neutral.

In sum, because there are disputes of fact regarding whether the letter banning Zeyen from School District property—when the School District opened the property as a limited public forum—was reasonable and viewpoint neutral, summary judgment is not appropriate on this claim.[7]

### C. Qualified Immunity

Defendants next argue Vagner is entitled to qualified immunity. "A municipality (and its employees sued in their official capacities) may not assert a qualified immunity

---

[7] Ripeness may still be an issue with this claim. Defendants argue Zeyen could have, and should have, petitioned the School Board for an exception to the blanket no-trespass letter. School District policy does provide for the consideration of "citizen petitions." However, none of the letters Zeyen received articulated that such an option was available to him. In addition, Zeyen's lawyer wrote to Vagner, asking her to reconsider. She summarily rejected the request. Faced with these circumstances, the Court is not sure if it is fair to reject Zeyen's claims because he did not specifically petition for an exception for each of the activities he wishes to engage in on School District property. Defendants have failed to cite case law directing the Court to rule otherwise.

defense to liability under Section 1983." *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) (cited in *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009). Thus, to the extent Defendants sued Vagner in her official capacity, she is not entitled to qualified immunity. Whether Vagner is entitled to qualified immunity in her individual capacity is a more difficult question.

The Supreme Court recently reiterated its long established qualified immunity law in *Kisela v. Hughes*:

> "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. ——, —— –, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam ) (alterations and internal quotation marks omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam ).

> Although "this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U.S., at – ——, 137 S.Ct., at 551 (internal quotation marks omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ibid.* (internal quotation marks omitted). This Court has "'repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *City and County of San Francisco v. Sheehan*, 575 U.S. ——, ——, 135 S.Ct. 1765, 1775–1776, 191 L.Ed.2d 856 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); *see also Brosseau*, supra, at 198–199, 125 S.Ct. 596.

No. 17-467, 2018 WL 1568126, at *2 (U.S. Apr. 2, 2018). As explained above, Zeyen has not established a violation of his Fourteenth Amended due process rights. Therefore, the Court need not address whether Vagner's qualified immunity defense attaches to this

claim. However, Zeyen may ultimately succeed on his claim in that certain specific situations, the policy banning him from School District property violated his First Amendment rights. Thus, the Court must decide whether this right was "clearly established."

Zeyen has cited no cases for the proposition that the First Amendment right he says was violated is "clearly established." The most similar case is the Second Circuit's decision in *Johnson*. Not only is *Johnson* not binding on this Court, but the Second Circuit issued *Johnson* after the events that gave rise to this action took place. *See Brosseau*, 543 U.S. at 198 (explaining "reasonableness is judged against the backdrop of the law at the time of the conduct"). Accordingly, the Court finds the First Amendment right Zeyen asserts was not "clearly established" when Vagner issued the no-tresspass letter. Thus, Vagner, as sued in her individual capacity, is entitled to qualified immunity.

*D. State Law Claim*

Finally, Zeyen asserts a claim under section 32-1010 of the Idaho Code. This code section provides, in part, that "Governmental efforts that restrict or interfere with [certain] fundamental [parental] rights are only permitted if that restriction or interference satisfies the strict scrutiny standard provided in section 32-1013, Idaho Code." Idaho Code § 32-1010(5). Primarily, these rights include a parent's right "to make decisions concerning the care, custody, and control" of the minor children over which the parent has custody. Idaho Code §§ 32-1010; 32-1011. Under the strict scrutiny provided for in section 32-1013, any "restriction of or interference with such rights shall not be upheld unless it [the government] demonstrates by clear and convincing evidence that the

restriction or interference is both: (a) Essential to further a compelling governmental interest; and (b) The least restrictive means available for the furthering of that compelling governmental interest." Idaho Code § 32-1013.

In analyzing this claim, the Court first must determine whether Vagner's letter banning Zeyen from School District property and school events interfered with his fundamental parental rights "recognized in sections 32-1011 through 32-1013, Idaho Code." Idaho Code § 32-1010(4). If the Court determines the no-trespass letter did interfere with these rights, the Court will then turn to the strict scrutiny analysis.

Zeyen summarily argues that the letter interfered with his fundamental parental rights. Zeyen cites no cases, no legislative history, and no secondary sources that would justify reading the right to access School District property and school events into the statute. The applicable code sections became effective on July 1, 2015. Accordingly, the Idaho Supreme Court (and any other Court for that matter) has not had the opportunity to expound on the breadth of a parent's right "to make decisions concerning the care, custody, and control" of his or her minor children. However, Zeyen has also not cited cases interpreting similar statutes (if there are any) from other states or any other relevant legal authority. On its face, the statute focuses on *decision making* concerning the care, custody, and control of children. Zeyen has not articulated why he needs access to School District property and school events in order to make such decisions. Without more, the Court cannot find Vagner's letter violated Zeyen's fundamental parental rights "recognized in sections 32-1011 through 32-1013, Idaho Code." Accordingly, Zeyen's state law claim cannot survive summary judgment.

# V. ORDER

THE COURT HEREBY ORDERS:

1. Defendants' Motion for Summary Judgment (Dkt. 32) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to all claims except Zeyen's First Amendment claim (as asserted against the School District and Vagner in her official capacity) that the no-trespass letter prevented him from voting on School District property, attending public meetings on School District property, or attending school sporting events.

2. Century High School is DISMISSED as an improper party.

3. Mary Vagner, as sued in her individual capacity, is entitled to qualified immunity as to Zeyen's First Amendment claim.

4. Defendants' Motion to Strike (Dkt. 35) is DENIED.[8]

DATED: May 15, 2018

David C. Nye
U.S. District Court Judge

---

[8] Zeyen is "not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [in an affidavit]; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995)